FILED

2007 APR 17 PM 4: 25

CLERK US DISTR ....
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN GILMORE | CASE NO. 05-CV-1863 W (WMc) |
| Petitioner, | **ORDER ADOPTING REPORT AND RECOMMENDATION** |
| v. | |
| JEANNE WOODFORD, Acting Secretary of the California Department of Corrections and Rehabilitation, | |
| Respondent. | |

On September 28, 2005, Petitioner Steven Gilmore , a state prisoner proceeding *pro se*, commenced this habeas corpus petition pursuant to 28 U.S.C. § 2254. Gilmore challenges his armed robbery conviction.

On August 17, 2006, United States Magistrate Judge William McCurine, Jr., issued a Report and Recommendation ("Report") recommending denial of Gilmore's habeas request. On September 8, 2006, the Court adopted the Report. Four days later, the Court received Gilmore's request for an extension of time to file objections. The Court granted the request, and Gilmore subsequently filed objections to the Report.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1.(d.1). For the reasons outlined below, the Court **ADOPTS** the Report and **DENIES** the Petition.

05cv1863w

## I.   BACKGROUND

The following relevant facts are taken from the California Court of Appeal's opinion in People v. Gilmore, No. D039279, slip op.

On November 3, 2000, at 6:30 p.m. three Black men wearing masks entered Al & Ed's Auto Sound in Vista. Armed with handguns, they took approximately $1,000 from the cash register and took the wallet of Jose Solorio, a customer. The robbers fled in a white Buick Regal. The victims described the height of the robbers as ranging from slightly under six feet to six feet three inches.

The Java Hut is a coffee shop located 6.5 miles from Al & Ed's Auto Sound. About 7:00 p.m. on November 3, three Black men wearing ski masks and armed with handguns 'burst' into the Java Hut and announced it was a hold up. One robber pointed a gun at a customer Joanne Hamilton as he took her purse. Another robber forcibly grabbed the store clerk, Laura Hansen, and told her to open the cash register. Because the cash register jammed, the robbers took it with them and fled. There was approximately $57 in the register.

Hansen testified the height of one of the robbers was five feet four inches, another robber was a little taller and the third was significantly taller. Hamilton testified two robbers were five feet seven inches tall and the third robber was six feet eight inches tall. At the scene, Hamilton's husband, who is six feet three inches tall, gave similar height descriptions, but at trial he testified one of the robbers was six feet tall. Gilmore's height is six feet one inch.

Responding to the scene, a deputy sheriff noticed a tan 1982 Buick Regal parked outside the Java Hut on the shoulder of the road; the engine was warm. The windshield wipers were running; it had been raining that evening. The steering column was damaged, with wires hanging out of it. The car had been reported stolen. A black, right handed cloth glove was found on the driver's seat. Two of Gilmore's fingerprints were on or near the passenger door mirror.

During a search of Gilmore's apartment, sheriff deputies found two cases (1,000 rounds) of 7.61 caliber ammunition in a hallway closet and 45 rounds of nine millimeter ammunition in Gilmore's bedroom closet. Also recovered from the apartment was a black knit cap with the eyes and mouth cut out and a credit card for Jose Solorio, a robbery victim from Al & Ed's Auto Sound.

Sheriff's deputies searched Gilmore's vehicle and found a garment bag containing a loaded nine-millimeter handgun, a loaded Mossberg 410-caliber pump action shotgun and a Ruger Mini-30 rifle. A black, left-handed glove also was found in the garment bag.

It was stipulated that Gilmore had previously been convicted of a felony. Torrence Williams, who had previously been convicted of robbery and was serving a state prison sentence at the time of trial, testified on behalf of Gilmore. Williams, who had known Gilmore for approximately seven years, said he found Solario's credit card on the sidewalk in front of Gilmore's apartment and left it on a counter inside. Williams also said he and two other individuals put the black bag containing guns into Gilmore's car. Williams refused to reveal the names of the others because he did not want to be labeled a snitch.

On April 3, 2001, Gilmore was charged with the robberies at the Java Hut and Al & Ed's Auto Sound. On October 26, 2001, a jury found Gilmore guilty of the Java Hut robbery, but was unable to reach a verdict for the Al & Ed's Auto Sound robbery.

Gilmore filed an appeal arguing that (1) his suppression motion should have been granted and (2) the evidence was insufficient to support the robbery conviction. On April 16, 2003, the California Court of Appeal, Fourth Appellate District, Division One, affirmed the conviction. Gilmore thereafter filed a petition for rehearing based on Fourth Amendment grounds, which was denied. On May 27, 2003, Gilmore filed a petition for review with the California Supreme Court that was denied.

In September 2005, Gilmore filed this habeas petition. Gilmore asserts that he is entitled to habeas relief because (1) the trial court denied him a full and fair hearing on his Fourth Amendment claim and (2) the evidence was insufficient to support the criminal conviction.

## II.   LEGAL STANDARD

The duties of a district court in connection with a magistrate judge's report and recommendation are set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court "must make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify,

1  in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.

2  § 636(b)(1)(C); see also United States v. Raddatz, 447 U.S. 667, 676 (1980); United States

3  v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989).

4       When a reasoned state court decision addresses a petitioner's Constitutional claims,

5  Federal courts conduct an independent review of the record to determine whether the

6  state court's decision is contrary to, or an unreasonable application of clearly established

7  Supreme Court Law. See Delgado v. Lewis, 223 F. 3d 976, 982 (9th Cir. 2000). A state

8  court decision is contrary to clearly established Supreme Court law if it (1) applies a rule

9  that contradicts the governing law set forth in Supreme Court cases; or (2) confronts a set

10 of facts that are materially indistinguishable from a decision of the Supreme Court and

11 nevertheless arrives at the opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000).

12 A state court decision is an unreasonable application of the law to the facts "if the state

13 court identifies the correct governing legal principle from [the Supreme Court's] decisions

14 but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

15 **III.  ANALYSIS**

16      Having read and considered the underlying Petition, the Report and Gilmore's

17 Objection thereto, the Court concludes the Report presents a well-reasoned analysis of the

18 issues. The Court, therefore, finds that Gilmore is not entitled to federal habeas relief.

19      **A.  Gilmore was not denied a full and fair hearing.**

20      In his Petition, Gilmore asserted that the officer's search of his apartment violated

21 the Fourth Amendment.  Respondent did not argue the merits of the Fourth Amendment

22 claim, instead asserting that the claim was not cognizable under Stone v. Powell, 428, U.S.

23 465 (1979) because Gilmore received a full and fair litigation in state court on his Fourth

24 Amendment claim.  In his traverse, Gilmore argued that the state proceedings were not

25 full and fair under Townsend v. Sain, 372 U.S. 293, 313 (1963). The Report rejected this

26 argument, and Gilmore now objects to the Report.

27      In Stone v. Powell, the U.S. Supreme Court explained that,

28      where the State has provided an opportunity for full and fair litigation of a

- 4 -

> Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Id., 428 U.S. at 484. Because the Supreme Court has not delineated the perimeters of "full and fair litigation", the Ninth Circuit uses the standard identified in Townsend v. Sain to determine whether a state's evidentiary hearing is full and fair. See Mack v. Cupp, 564 F.2d 898, 900–901 (9th Cir. 1977). Under Townsend, an evidentiary hearing is not full and fair if:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Townsend, 372 U.S. at 313. While these factors are important in evaluating whether a petitioner was provided an opportunity to fully and fairly litigate his Fourth Amendment claim in state court, the Townsend standard does not have to be applied literally. Mack, 564 F.2d at 901.

Gilmore argues that he "could not of had a full and fair hearing in the State Court . . . ." (Obj. at 2.) In support of this argument, Gilmore appears to rely on the second Townsend factor concerning whether the state court's factual determination is fairly supported by the record as a whole. Specifically, Gilmore contends that the facts demonstrate that the officers coerced him into consenting to the search, thereby rendering it involuntary and in violation of Gilmore's Fourth Amendment rights. The Court disagrees.

In the fall of 2000, a law enforcement task force was investigating a series of 33 robberies believed to have been committed by Deep Valley Crip gang members. Torrence Williams was under surveillance by the task force, and Gilmore was linked to Williams through their association with the gang. Additionally, William's girlfriend, Marie Malone,

had been observed at Gilmore's residence, and she had told authorities that she and Williams stored some of their belongings at Gilmore's apartment.

On November 15, 2000, officers learned that Williams was arrested in connection with a robbery. Additionally, Gilmore's wife was seen loading property into her vehicle. Because officers believed she was getting rid of William's property, officers stopped Mrs. Gilmore and searched her vehicle. Although officers found nothing incriminating, Mrs. Gilmore told Deputy Sheriff Art Wager that a purple storage tub belonging to Malone (William's girlfriend) was in the apartment. Wager asked Mrs. Gilmore for permission to search the apartment, but she declined and told him to ask her husband. Mrs. Gilmore, along with her children, were then ordered to "stay put" while Wager went to ask Gilmore for permission to search the apartment.

Meanwhile, Lisabeth Abramson, a child protective services social worker assigned to investigate Gilmore for physical abuse of his four-year-old stepson, had arranged to check on the safety of his children after learning that guns were possibly in the apartment. Accordingly, when Officer Wager knocked on the door to Gilmore's apartment, Wager stated that the purpose of the visit was twofold: (1) assess the risk to the children because of the report of guns in the home; and (2) search for stolen property because people charged with robbery had been staying there. Gilmore allowed Abramson inside, and the officers followed. Gilmore did not object. Gilmore was told that his wife and two children were being detained, and he was patted down for weapons while officers did a protective sweep of the apartment. Gilmore was then told to remain seated on the sofa. Additionally, when Gilmore opened the door, Officer Wager saw a purple tub, which he believed gave him probable cause to get a search warrant.

Initially, Gilmore refused to allow officers to search the apartment without a search warrant. Wager, therefore, stepped outside to arrange for a warrant. While Wager was outside, an officer refused to allow Gilmore to use the telephone, explaining that the apartment was "frozen" while the search warrant was being obtained. Gilmore asked how long it could take to get the warrant, and the officer answered from one-half to four hours.

- 6 -

05cv1863w

1  Gilmore then replied "If it's going to take that long, go ahead . . . search the place."
2  Officer Wager then came inside, talked to Gilmore about giving consent, and had Gilmore
3  sign a consent form.

4      During the search of the apartment, officers found the credit card of Jose Solorio,
5  one of the victims from the Al & Ed's Auto Sound robbery. At that point, officers halted
6  the search and obtained a warrant. Marie Malone was then brought to the apartment, and
7  she consented to a search of the purple tub.

8      Gilmore filed a motion with the trial court to suppress his statements to police and
9  the items found in his residence on the basis that they were obtained in violation of his
10 Fourth Amendment rights. The motion was fully briefed and an evidentiary hearing was
11 held, during which time testimony was provided from nine witnesses. Gilmore testified
12 that when he answered the door, Abramson said she wanted to ensure that the children
13 were safe, and Officer Wager stated that he wanted to check Malone's purple tub.
14 Gilmore testified that he was patted down by Wager, and that another officer checked the
15 couch, where Gilmore was then ordered to stay. When Gilmore saw Abramson with the
16 officers, he believed she was there to take his children because on previous visits, she was
17 not accompanied by law enforcement. Additionally, Gilmore testified that when he
18 refused to consent to the search, Wager said he would get a warrant and that it would take
19 up to four hours. Because Gilmore was not allowed to use the telephone, he said he felt
20 that he was under arrest. Furthermore, when Wager stepped outside to call for the search
21 warrant, Gilmore stated that another officer said that the authorities would take Gilmore's
22 children if he did not consent to a search. According to Gilmore, if this threat had not
23 been made, he would not have consented to the search. The officer denied making the
24 threat.

25     The trial court denied Gilmore's motion to suppress finding that the officers had
26 sufficient probable cause to obtain a search warrant, that Gilmore had voluntarily
27 consented to the search, and that the officers had a legitimate right to contact Gilmore and
28 ask for his consent. Gilmore appealed the trial court's decision. His Opening Brief was

1   36 pages, and his Reply brief was 14 pages.  The Court of Appeal fully discussed the

2   suppression motion, and affirmed the trial court's ruling.  Gilmore then filed a petition for

3   rehearing with the Court of Appeal, which was denied.  Gilmore's subsequent writ of

4   certiorari with the California Supreme Court was also denied.

5        Based on these facts, the Court concludes that the state court's determination was

6   fairly supported by the record as a whole.  Additionally, the record establishes that

7   Gilmore was afforded a full and fair opportunity to litigate his Fourth Amendment claim

8   in state court.

9        **B.    Gilmore's Sufficiency of Evidence Claim.**

10       The Court of Appeal affirmed Gilmore's robbery conviction based on its

11  conclusion that the record contained substantial evidence to support the convictions.

12  (People v. Gilmore, No. D039279, slip op. at 13.)  The Report agreed.

13       In his Objection, Gilmore now reiterates the same arguments made to the Court of

14  Appeal and in his Petition.  Specifically, Gilmore argues that because none of the robbery

15  victims were able to identify him, the prosecution was required to rely on Gilmore's

16  fingerprints found in the abandoned car outside the Java Hut.  (Obj. at 3.)  Gilmore

17  contends that the fingerprints were insufficient to support his conviction.  (Id.)

18       In a federal habeas claim, the relevant inquiry in evaluating a sufficiency of the

19  evidence claims is whether, "after viewing the evidence in the light most favorable to the

20  prosecution, any rational trier of fact could have found the essential elements of the crime

21  beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  The Ninth

22  Circuit has further recognized that after "AEDPA, we apply the standards of *Jackson* with

23  an additional layer of deference."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

24  Under this standard, the Court concludes that the Report correctly determined that

25  Gilmore's conviction was supported by substantial evidence.

26       Victims from the Java Hut robbery testified that one of the robbers wore gloves

27  that exposed the robber's fingers.  Gilmore's fingerprints were found on the stolen car that

28  was abandoned outside the Java Hut, and which matched the description of the getaway

1   vehicle used at the robbery of Al & Ed's Auto Sound.  Additionally, when found, the

2   vehicle's engine was warm and the windshield wipers were still running.  The Court agrees

3   that these facts are sufficient to show that the jury reasonably concluded that Gilmore and

4   the other robbers drove to the location of the vehicle, and that Gilmore left his

5   fingerprints on the vehicle.

6          Moreover, in addition to the fingerprint evidence, the victims from the Java Hut

7   robbery testified that the robbers used black ski masks, and a black ski mask was found

8   at Gilmore's apartment.  The police also found a black, right-handed glove in the

9   abandoned vehicle, and a black, left-handed glove in Gilmore's vehicle on the day of his

10  arrest.

11         Based on this evidence, the Court concludes that it was objectively reasonable for

12  the jury to find Gilmore guilty of the robberies.  Thus, the determination that the evidence

13  was sufficient to support the conviction was not contrary to U.S. Supreme Court authority,

14  and was not based on an unreasonable determination of the facts.

15  **IV.    CONCLUSION AND ORDER**

16         In light of the foregoing, the Court **ADOPTS** the reasoning and findings contained

17  in the Report.  For the reasons stated in the Report, which is incorporated herein by

18  reference, the Court **DENIES** Gilmore's § 2254 writ of habeas corpus and orders this

19  case dismissed.  The Clerk of Court shall close the district court case file.

20         **IT IS SO ORDERED.**

21

22  **DATE: April 17, 2007**

23                                              HON. THOMAS J. WHELAN

24                                              United States District Court
                                                Southern District of California

25

26

27

28

- 9 -                                           05cv1863w